**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

BETTY JO JONES,

       Plaintiff,

v.                                           Civil Action No. 3:07cv462

TOWN OF ASHLAND, VIRGINIA,

and

CRAIG STEVENS,

       Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on Defendant Town of Ashland's Rule 12(b)(1) and Rule 12(b)(6) Motions to Dismiss (Docket No. 5) and Defendant Craig Stevens's Motion to Dismiss (Docket No. 7). The parties briefed the matter. For the reasons stated below, it is RECOMMENDED that Defendant Town of Ashland's Rule 12(b)(1) and Rule 12(b)(6) Motion be GRANTED and Defendant Stevens's Motion to Dismiss be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Viewed in the light most favorable to plaintiff Betty Jo Jones, the facts follow. In July 2006, Jones lent $300 cash to Steven Edwards. Edwards promised to repay Jones the next day and gave her certain equipment he used in his business as a tree surgeon, including climbing gear and a chain saw, as collateral for repayment of the loan. Edwards failed to repay Jones. Thus, in mid-August 2006, Jones deposited the equipment with Wells Tree Service in return for $300 and promised return of the equipment when she received the $300 from Edwards and repaid Wells.

On or about August 17, 2006, Lisa Heath called Jones.  Heath claimed that she owned the equipment that Edwards gave to Jones as collateral for the loan.  Heath demanded that Jones return the equipment.  Jones told Heath she would return the equipment after Edwards repaid the loan.

On August 21, 2006, Jones received a phone call from her mother informing her that the Town of Ashland Police Department was looking for her.  Jones's neighbor also observed a police officer, Craig Stevens, at Jones's residence.  Stevens went to Jones's residence and into the backyard where he searched Jones's shed.  Stevens questioned Jones's neighbor and stated that he had a felony warrant for Jones's arrest, and that Jones should call him.

Jones called the Hanover County Sheriff's Department and spoke to Stevens.  Jones and Stevens arranged to meet at the Luck Chevrolet dealership in Ashland on August 21, 2006.  During the meeting, Stevens represented to Jones that he had a warrant for her arrest and threatened to arrest her if she did not return the equipment to Heath.  These threats caused Jones to borrow $300, retrieve the equipment from Wells, and give the property to Stevens.

On August 22, 2006, Stevens again contacted Jones.  He demanded that she return additional items, namely boots and the bar of a chain saw.  He again threatened to arrest her if she did not comply.

On August 23, 2006, Jones filed a complaint with the Town of Ashland Department of Police.  On September 26, 2006, Chief of Police Frederic Pleasants, Jr., wrote a letter to Jones.  Pleasants promised that Stevens would "be dealt with according to [the police department's] internal Rules & Regulations" as Jones's allegations were "partially substantiated."  (Compl., Ex. A.)

Jones filed her Complaint on August 8, 2007, against the Town of Ashland and Stevens for violating her Fourth, Fifth, and Fourteenth Amendment rights. (Docket No. 1.)  Jones also alleges several state tort violations solely against Stevens.  In the Complaint, Jones alleges that Stevens was aided and abetted by "certain other officers" currently unknown to her.  (Compl. ¶ 32.)   Regarding her section 1983 claim, Jones states that the Town of Ashland ratified and adopted Stevens's wrongful conduct by failing to take "adverse financial or promotional action toward Stevens," by failing to require him to pay her restitution, and, "upon information and belief," for promoting him.  (Compl. ¶¶ 27, 33.)

On September 5, 2007, the Town of Ashland filed its Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Docket No. 5) and on September 11, 2007, Stevens filed his Motion to Dismiss (Docket No. 7).  Plaintiff Jones has filed responses to these motions.  (Docket Nos. 10, 12.)  Accordingly, the Motions are ripe for adjudication and are before the Court for report and recommendation to the District Court.

## II.  STANDARD OF REVIEW

Upon motion by a party, Rule 12(b)(1) allows a court to dismiss a pleading for lack of subject matter jurisdiction, and Rule 12(b)(6) allows a court to dismiss a pleading for failure to state a claim upon which relief can be granted.[1]

---

[1]Rule 12(b) states in relevant part:

[T]he following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . , (6) failure to state a claim upon which relief can be granted . . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as

Courts apply the same standard to Rule 12(b)(1) motions as they apply to motions for summary judgment. *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006), *available at* 2006 WL 3798132, at *2. Therefore, a court properly grants a motion to dismiss under Fed. R. Civ. P. 12(b)(1) when it can be established that the court lacks subject matter jurisdiction either on the ground that the complaint on its face fails to state a basis for relief, in which case the plaintiff is accorded the same procedural protections he would receive under Fed. R. Civ. P. 12(b)(6), or on the ground that the jurisdictional allegations in the complaint are false, in which case the court may consider and weigh evidence outside the complaint to resolve any factual dispute with the burden of persuasion remaining with the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). If the facts that are necessary to determine jurisdiction are intertwined with the facts central to the merits of the dispute, the proper course of action is for the court to find that jurisdiction exists and then to resolve the factual dispute on the merits unless the claim is made solely for the purpose of obtaining jurisdiction, or is determined to be wholly insubstantial and frivolous. *Adams*, 697 F.2d at 1219; *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946).

By comparison, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th

_____

provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).

4

Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him [or her] to relief." *Conley,* 355 U.S. at 45-46. In *Bell Atlantic Corp.*, the Supreme Court noted that the complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." 127 S. Ct. at 1964-65 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965 (citation omitted), to one that is "plausible on its face," *id.* at 1974, rather than "conceivable." *Id.* Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

5

## III.  DISCUSSION

### A.        Defendant Town of Ashland's 12(b)(1) and 12(b)(6) Motions

Jones sues the Town of Ashland under 42 U.S.C. § 1983, which provides a private right

of action for deprivation of constitutional rights by persons acting under the color of law.[2]

However, "[s]ection 1983 . . . 'is not itself a source of substantive rights, but merely provides a

method for vindicating federal rights elsewhere conferred.'. . . Hence, to establish liability under

Section 1983, a plaintiff must show that the defendant, acting under color of law, violated the

plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury."

*Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (*quoting Westmoreland v. Brown*,

883 F. Supp. 67, 71 (E.D. Va. 1995) and *citing Coppage v. Mann*, 906 F. Supp. 1025, 1035 (E.D.

Va. 1995)).  When a municipality is sued, *"Monell* establishes that municipal liability under

Section 1983 arises only where the municipality, *qua municipality*, has undertaken an official

policy or custom which causes an unconstitutional deprivation of the plaintiff's rights."  *Brown*,

308 F. Supp. 2d at 692 (*citing Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694

(1978)).

---

[2]Section 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to
be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

1.     **Rule 12(b)(1)**

Jones alleges only Count I against the Town of Ashland ("the Town" or "Ashland"),

averring that the Town violated her constitutional rights by ratifying and adopting Stevens's (and

other unknown officers') actions when it failed to punish Stevens or secure restitution to her, and

when it promoted Stevens. (Compl. ¶¶ 33-34.)  Jones argues that Ashland's "adoption" amounts

to an "official policy or custom," from which section 1983 liability flows.  (Mem. In Opp'n of

Betty Jo Jones to Town of Ashland's Mot. To Dismiss ("Jones's Opp'n to Ashland") at 2.)

Ashland counters that as a municipality, it maintains sovereign immunity from liability for the

intentional torts of its employees,[3] and, alternatively that the allegations insufficiently state a

claim upon which relief can be granted.  (Br. in Supp. of Rule 12(b)(6) and 12(b)(1) Mot.

("Ashland's Br.") at 6-7.)  Rule 12(b)(1) motions are the proper mechanism for challenging

jurisdiction on the basis of sovereign immunity.  *Hodge v. United States*, 443 F. Supp. 2d 795,

797 (E.D. Va. 2006).  Federal courts lack jurisdiction over claims for which the government

correctly asserts sovereign immunity.  *Enzo Therapeutics, Inc. v. Yeda Research & Dev. Co. of*

*The Weizmann Inst. Of Sci.*, 467 F. Supp. 2d 579, 586 (E.D. Va. 2006) (*citing FDIC v. Meyer*,

510 U.S. 471, 475 (1994)).

Virginia law clearly establishes that "a municipality is immune from liability for

intentional torts committed by an employee during the performance of a governmental function."

*Neise v. City of Alexandria*, 564 S.E.2d 127, 133 (Va. 2002).  Also, a municipality is not liable

for "negligence in the performance of governmental functions," and "maintenance of a police

---

[3]Counts II through V allege that Stevens committed the intentional torts of malicious
prosecution, extortion, intentional infliction of emotional distress, and tortious interference with
contract. (Compl. ¶¶ 35-52.)

force is a governmental function." *Id.*  The Virginia Supreme Court expressly has refused to create an exception to sovereign immunity for negligent retention.  *Id.* ("we decline to create an exception to the protection afforded by sovereign immunity for the independent tort of negligent retention").  As such, to the extent Count I alleges liability against Ashland solely for the intentional torts committed by Stevens, the Motion to Dismiss must be GRANTED.

### 2.    12(b)(6) Motion for failure to claim custom and policy

However, Jones maintains that the gist of her claim spawns not from liability under respondeat superior or vicarious liability, but because Ashland adopted and ratified Stevens's conduct by failing to punish Stevens, failing to require restitution, and by later promoting Stevens.  Via this failure to act, Jones contends Ashland adopted an "official policy or custom" and ratified Stevens's conduct, thereby generating liability.[4]

---

[4] Ashland also contends that Plaintiff's suit should be dismissed because she failed to allege that she provided timely written notice of the nature of the claim, including time and place as to when the injury occurred.  Va. Code § 15.2-209.  Section 15.2-209 requires a plaintiff bringing a claim against a county, city, or town for negligence to file a written statement of the nature of the claim within six months of injury.  Section 15.2-209 provides in relevant part:

> A.  Every claim cognizable against any county, city, or town for negligence shall be forever barred unless the claimant or his agent, attorney, or representative has filed a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred, within six months after such cause of action accrued . . . .
> G.  The provisions of this section are mandatory and shall be strictly construed.  This section is procedural and compliance with its provisions is not jurisdictional.

Va. Code § 15.2-209.

Federal courts may, in some instances, apply notice requirements from the Virginia Code in a manner affecting an ability to bring suit in federal court.  *See, e.g., Lee v. State Bd. for Cmty. Colls.*, No. 94-2614, 1995 WL 460552, at *3 (4th Cir. Aug. 4, 1995) (applying the notice requirement in the Virginia Tort Claims Act, section 8.01-195.6 of the Virginia Code, to an assault and battery claim in a federal action).

Ashland correctly notes that Jones fully omits the phrase "policy or custom" from her complaint, a not inconsequential omission given that her cause rests on that theory.  But Jones responds that she need not because courts have allowed cases to proceed when a municipality's policy has adopted or acquiesced in unconstitutional conduct that caused injury.   Jones correctly states that an official custom or policy "need not derive from municipal ordinances."  *Kirby* v. *City of Elizabeth City, N.C.*, 380 F.3d 777, 787 (4th Cir. 2004).  Rather, "it may also be found in formal or informal *ad hoc* 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy."  *Id.* (*quoting Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987)).

Still, Jones's argument does not persuade.  Indeed, Jones flips a traditional section 1983 analysis on its head.  Rather than presenting the court with a narrowly pled cause of action as to a policy resulting in a specific harm, Jones contends Ashland is liable because she experienced a harm, and Ashland, as a matter of policy, adopted the harmful conduct by inadequately punishing its perpetrator.  She states, "Ashland (per Ms. Jones' present belief), proceeded to reward Stevens for his misconduct, thus making [sic] ratifying the conduct and making his misconduct the

─────────────────────

It appears that no court has yet addressed whether Jones's allegations as to constitutional violations under section 1983 trigger the Virginia notice provision quoted above.  The statute itself calls attention to its procedural nature, albeit concomitantly noting that the provisions are mandatory and require strict construction. Va. Code § 15.2-209(G).  No court has yet evaluated whether this procedural requirement rises to a substantive bar applicable by this court.  Given the September 2006 reply from the police chief, the record before this court contains an indication of some timely notice, albeit not its content nor any record of a statement delivered to the proper recipient. (Compl., Ex. A); *see* Va. Code § 15.2-209(B) (requiring statement to be filed with municipal attorney or chief executive); *compare Town of Crewe v. Marler*, 319 S.E.2d 748 (Va. 1984)(refusing to accept timely notice that failed to identify precise location of accident).

Because the law does not clearly warrant it, because the record here remains undeveloped, and because the discussion above resolves the issue on other grounds, this court does not recommend dismissal under Va. Code § 15.2-209.

Town's misconduct."  Jones's Opp'n to Ashland at 4.  (Docket No. 10.)  Jones does not plead

that any town policy caused the harm in the first instance.

This Court cannot see how, even presuming all allegations, such a claim could sustain a

theory of municipal liability under section 1983.  First, it is hard to decipher how this differs

from a claim arising solely from Stevens's conduct in the first instance.  Second, even if it does,

Jones's complaint attaches a letter from the Ashland Police Chief informing her that, because her

complaint was "partially substantiated," Stevens would be "dealt with according to our internal

Rules & Regulations."  (Compl., Ex. A.)  Jones does not allege how she knows that any action

taken by the police chief or the town was deficient, nor does she aver any close temporal

relationship between any promotion Stevens may have received and the complained of conduct

that suggests ratification and adoption of his acts by the Town.[5]  More importantly, this Court

fails to find (and Jones has not cited) a single case in which municipal inaction against an

officer's alleged unconstitutional conduct constitutes a policy or custom under the law.  Here,

Jones does not even allege that such action occurred in anything other than the tools incident, or

that any policy maker knew of it before it commenced.[6]

---

[5]The court notes that whether Jones would have a right to access any personnel actions recorded against Stevens, or whether the Town could release them, remains open.  The Town could be prohibited from releasing such information.

[6]Cases sustaining a cause of action for a municipal policy or custom tend to involve systemic abuse or failures.  For instance, in *Spell v. McDaniel*, the Fourth Circuit upheld a jury verdict awarding substantial damages to Spell who sustained physical injuries while in the custody of a City of Fayetteville police officer. 824 F.2d 1380.  In *Spell,* evidence showed that the City trained employees to use excessive force on arrestees, and condoned and advocated such force.  Spell's injuries flowed from an officer's use of that training, so the court sustained liability under section 1983.
      In *Brown*, the executrix of the Stevenson estate sued the City of Richmond and its sheriff. There, when Stevenson began serving a sentence for failure to pay child support, Stevenson told jail officials that he lacked a spleen and had a compromised immune system.  The jail staff

Jones cites only one case in support of her theory, *Kirby v. City of Elizabeth City, N.C.*, in which Kirby alleged that Elizabeth City ratified unconstitutional conduct.  First, no constitutional violation was found in *Kirby*.  More importantly, *Kirby* strays so far from the facts alleged in this case it cannot persuade this court that it pertains here.  In *Kirby*, the United States Court of Appeals for the Fourth Circuit evaluated an appeal from a decision granting the city summary judgment as to a police officer's claim.  380 F.3d at 787.  Kirby alleged that his pay was cut in retaliation for his truthful testimony at a public hearing challenging a supervisor's action, and that he was demoted based on his subsequent grievances about the alleged retaliation.

The *Kirby* court recognized that qualified immunity would not protect municipalities when actors proceed "pursuant to an official policy or custom of the municipality" even if the action did not arise from a municipal ordinance.  *Id.*  Still, the court did not find that Kirby's demotion after his grievance amounted to even a "formal or informal *ad hoc* 'policy' choice[] or decision[] of municipal officials authorized to make and implement municipal policy."  *Id.* (*quoting Spell*, 824 F.2d at 1385).  The court found that Kirby failed to forecast evidence that the City Manager, who reviewed and implemented the supervisor's personnel action, approved of retaliation as a basis for the demotion rather than any other basis, including Kirby's failure to abide by leave requirements.  *Id.* at 788.  Thus, Kirby's claim that "the City ratified and

---

nonetheless placed Stevenson in general population where he developed bacterial meningitis. Stevenson's attempts to receive treatment went largely unaddressed, and he died less than three weeks from intake due to complications arising from sepsis and dehydration.  *Brown* evaluated the city's pattern or policy of *inaction* despite the overcrowded conditions within the city jail. The *Brown* court found that the City failed to act despite actual knowledge of a long history of overcrowding conditions which likely could "result in inmate sickness and suffering."  The court found that such suffering could constitute injury to an identifiable group of persons in a special relationship to the city.  *Brown*, 308 F. Supp. 2d at 694.  The Court denied the City's motion to dismiss.

acquiesced" in the allegedly unconstitutional retaliation foundered.  *Id.*  Like the plaintiff in

Kirby, Jones fails to forecast any evidence that the Town's failure to punish Stevens or its

promotion of Stevens plausibly was meant to ratify his unconstitutional conduct or acquiesce to

it.

Another Fourth Circuit case instructs the Court's finding.  In *Carter v. Morris*, 164 F.3d

215 (4th Cir. 1999), the Fourth Circuit found that the plaintiff failed to allege a policy or custom

actionable under section 1983.  In a more traditional posture alleging that a policy caused her

harm, Pamela Carter sued for illegal search and seizure, unlawful arrest, and excessive force after

officers came into her home at 2:00 a.m. with an arrest warrant for her husband.  Carter

contended the officers broke down her door, arrested her using excessive force and speaking

racial epithets, and harassed her after this episode.  She was later eliminated as a suspect in any

robberies, and her husband was acquitted of any offenses.  Upholding the district court's

summary judgment finding for the defendants, the Fourth Circuit decided that Carter's claim did

not amount to one of a "policy of deliberate indifference or the condonation of an

unconstitutional custom." *Carter,* 164 F. 3d at 218 (*citing Bd. of County Comm'rs v. Brown*, 520

U.S. 397, 405 (1997)).  The court cautioned that "'[w]here a plaintiff claims that the municipality

has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous

standards of culpability and causation must be applied to ensure that the municipality is not held

liable solely for the actions of its employee.'" *Id.* (other citations omitted).

In reviewing Carter's claim, the court found that no departmental policy or custom had

been shown despite two incidents in addition to hers in which police officers had arrested and

detained citizens in error.  164 F.3d at 219-20.  The Court found these incidents insufficiently

"widespread and permanent" to create a custom or policy, especially because the record established no "causative link between any municipal decision and [the plaintiff's] own experience." *Id.* at 220. This finding rested in part on the police department's disciplinary action against the officer after investigation into the first incident, and release of the second arrestee as soon as the police department learned of the officer's error. *Id.* at 219-20. As in *Carter*, Jones presents allegations to the Court which appear to contraindicate liability because she attaches a letter acknowledging improper action, but stating that the officer would be dealt with accordingly. Moreover, she does not allege any separate incident of improper conduct.

Thus, Jones's claim, even presuming all allegations true, cannot withstand a motion to dismiss. She raises speculative allegations and presents an implausible theory of municipal liability. Therefore, the Court also RECOMMENDS that the District Court GRANT the Town of Ashland's Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted. (Docket No. 5.)

### 3.    <u>Punitive Damages and Fees</u>

The Town of Ashland also moves the Court to dismiss Jones's claim for $350,000 in punitive damages, plus attorney's fees and costs. (Ashland's Br. at 2.) "Municipalities . . . are not liable for punitive damages in a Section 1983 action." *Brown,* 308 F. Supp. 2d at 695 n.14 (*citing City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). Any request for fees would be moot given the recommendations as to the motions to dismiss. As such, the Court also RECOMMENDS that the District Court GRANT Ashland's motion to dismiss any claim for punitive damages or for fees. (Docket No. 5.)

**B.**   **Defendant Stevens's Motion to Dismiss**

Defendant Stevens moves the Court to dismiss the present action pursuant to

Rule 12(b)(6).  Jones's Complaint alleges five causes of action against Stevens.  (Compl. ¶¶ 29-

52.)  In Count I under section 1983, Jones alleges that "at all times [] material to this cause,

Stevens with respect to Ms. Jones was acting under color of statutes, ordinances, regulations,

customs and usages of the Commonwealth of Virginia and the Town of Ashland."  (Compl.

¶ 14.)  The Complaint is silent as to whether Stevens is sued individually or in his official

capacity.  (Compl. ¶ 34.)  As stated above, Counts II-V allege state law torts.  The Court now

considers each claim below.

**1.**   **Count I - 42 U.S.C. § 1983**

Section 1983 provides a private right of action for deprivation of constitutional rights by

persons acting under the color of law.  A defendant acts under color of law if he or she is

"clothed with the State's power," whether or not such conduct is authorized by state law.[7]

*Screws v. United States*, 325 U.S. 91, 110 (1945).

In this case, Jones alleges violations of her Fourth, Fifth, and Fourteenth Amendment

rights.  (Compl. ¶ 34.)  Jones's Fourth Amendment[8] claim, the dismissal of which Stevens does

---

[7]Stevens admits that he acted within the scope of his employment.  (Stevens's Answer
¶ 14.)  Although Ashland has answered denying that Stevens acted within the scope of his
employment, (Ashland's Answer ¶ 4), the Court will presume Stevens's actions occurred within
the scope of employment for purposes of this motion to dismiss.

[8]The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects,
against unreasonable searches and seizures, shall not be violated, and no Warrants
shall issue, but upon probable cause, supported by Oath or affirmation, and

not seek initially, appears to arise from Stevens's search of the shed in Jones's backyard without

a warrant.  (Compl. ¶ 34.)  Jones's Fifth and Fourteenth Amendment[9] claim arises from the

alleged deprivation of her liberty rights from Stevens's threats of arrest, and alleged deprivation

of her property rights from Stevens's inducing her to turn over property that she lawfully

possessed.  (Compl. ¶ 34.)   Viewing the allegations in the light articulated above, the Court first

considers whether Jones's claims may warrant relief under section 1983.

### a. Jones's Fifth and Fourteenth Amendment Claim - Property Right Deprivation

As to Jones's Fifth and Fourteenth Amendment claim, relief under section 1983 is

available only when the party has suffered an intentional unauthorized deprivation of property,

and when no meaningful postdeprivation remedy exists.  *See Hudson v. Palmer*, 468 U.S. 517,

533 (1984).  The Supreme Court has found that, in cases involving broad delegation of

discretionary powers, an action may lie when (1) the deprivation was not unforeseeable, (2) the

predeprivation process was possible, and (3) the employee action could not be characterized as

"unauthorized."  *Zinermon v. Burch*, 494 U.S. 113, 136-38 (1990); *accord Bogart v. Chapell*,

396 F.3d 548, 560 (4th Cir. 2005).  Therefore, the Court first considers whether Jones's

---

particularly describing the place to be searched, and the persons or things to be
seized.

U.S. Const. amend. IV.

[9]The Fifth Amendment states in relevant part that no person shall "be deprived of life,
liberty, or property, without due process of law."  U.S. Const. amend. V.  The Fourteenth
Amendment states in relevant part: "nor shall any State deprive any person of life, liberty, or
property, without due process of law; nor deny to any person within its jurisdiction the equal
protection of the laws."  U.S. Const. amend. XIV.

allegations amount to an intentional unauthorized deprivation of property.  Second, the Court considers whether Jones had a meaningful postdeprivation remedy.

Regarding whether the surrender of equipment constituted deprivation of Jones's property rights, section 1983 does not cover the "random and unauthorized conduct of a state employee" because the state cannot know when such actions will occur.  *Hudson*, 468 U.S. at 533.  Courts reason that "[t]he state can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct."  *Id.*  In this case, Jones herself alleges that Stevens lied about having arrest warrants. (Compl. ¶¶ 17, 19, 24).  Jones states that although Stevens claimed he sought lawful return of property, he in fact acted at the behest of Heath and did so under the color of law and with threat of criminal prosecution to further Heath's interest in "a private dispute."  (Compl. ¶¶ 28, 31). Jones does not allege the Town had reason to anticipate Stevens's actions.  While it can be said any municipality could foresee abusive use of police powers, the myriad types of potential abuse prevent liability arising every time abusive conduct occurs in fact.  Jones does not allege that Ashland had notice in this case.  Nothing before this Court suggests Jones's allegations describe anything other than what *Hudson* describes as random and unauthorized conduct.[10]  Therefore, the Court finds section 1983 liability inappropriate.

---

[10]Jones claims that because police officers can, when exigency requires, execute warrants otherwise requiring review, these powers are sufficiently discretionary to invoke a *Zinermon* analysis.  This court disagrees.  First, Stevens lied about any warrant's existence.  Second, the overriding rule remains that an officer must have any warrant signed by a neutral magistrate before effectuating a felony arrest (as was threatened here) or a search. Stevens's actions, as alleged, do not involve the type of broad delegation of discretionary powers that might invoke a *Zinermon* analysis.

Moreover, Jones retains a meaningful postdeprivation remedy. Jones has adequate redress in at least some of the state court tort remedies she pursues as part of this federal action. *Bogart,* 396 F.3d at 556. The law does not require a postdeprivation hearing in the circumstances described here.[11] As such, the Court RECOMMENDS the District Court GRANT Stevens's Motions to Dismiss Jones's Fifth and Fourteenth Amendment claim of deprivation of property in Count I of the Complaint.

### b. Jones's Fifth and Fourteenth Amendment Claim - Liberty Right Deprivation

As to Jones's Fifth and Fourteenth Amendment liberty rights claim, merely because a police officer stops short of arresting an individual does not preclude the Court from finding a deprivation of liberty. *Compare Riley v. Dorton*, 115 F.3d 1159, 1162 (4th Cir. 1997) (summarizing situations in which, short of arrest, a Fourth Amendment deprivation of personal freedom can occur). Jones still must plead a deprivation actionable under section 1983.

For the Court to find a deprivation of liberty, a plaintiff must show "the most egregious official conduct." *Chavez v. Martinez*, 538 U.S. 760, 774 (2003) (*quoting County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998), while noting rejection of that section 1983 claim that a police officer's deliberate indifference during high speed chase resulting in death of motorcyclist violated due process). Jones does not contend she was taken into custody. Instead, she alleges Stevens forced her to take unwanted actions via his threats and harassment.

---

[11] Despite the lack of a hearing, Jones's complaint to the police force at least generated a response. After Jones filed a complaint against Stevens, the police department investigated Jones's allegation and sent a written response to her within thirty days. (Compl., Ex. A.) The response indicated that Stevens would be "dealt with" pursuant to appropriate rules and regulations.

"[V]erbal harassment, abuse and threats, without more, are not sufficient to state a constitutional deprivation under § 1983."[12] *Miller v. Jack*, No. 1:06CV64, 2007 WL 2050409, at *5 (N.D. W. Va. Jul. 12, 2007) (*citing* cases); *compare Martin v. Kendall County*, 561 F. Supp. 726, 730 (N.D. Ill. 1983) (finding where there was no arrest, "plaintiffs can hardly contend their liberty was deprived merely by reason of their having to answer the unsuccessful petition . . . ."). In *Miller*, the *pro se* plaintiff claimed constitutional violations stemming from a sheriff's harassment at plaintiff's home, which allegedly included the officer questioning whether Miller sought "suicide by cop." (*Miller*, 2007 WL 2050409, at *1.)  The court made clear that:

> The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." (citations omitted).  Therefore, a constitutional claim based on verbal harassment or threats will fail, whether it is asserted under the Fifth Amendment, Eighth Amendment or Fourteenth Amendment.

*Id.* at *6.

Jones's contention that Stevens's calls and threats forced her to retrieve property, in his absence, and give it to him simply does not cross the threshold of unconstitutionality.  As such, the Court RECOMMENDS that the District Court GRANT Stevens's Motions to Dismiss Jones's Fifth and Fourteenth Amendment claim of liberty deprivation in Count I of the Complaint.

---

[12]   Certainly in cases involving incarcerated individuals, courts have found that threatening language and gestures alone do not create a constitutional violation.  *See Fisher v. Woodson*, 373 F. Supp. 970, 973 (E.D. Va. 1973) ("threatening language and gestures of penal official do not, even if true, constitute constitutional violations"); *Jones v. Repsch*, No. 06-4638, 2007 WL 509960, at *2 (E.D. Pa. Feb. 13, 2007) ("[i]t is well established that verbal harassment or threats . . . will not, without some reinforcing act accompanying them, state a constitutional claim").

## 2.     Count II - Malicious Prosecution

Next, Stevens moves the Court to dismiss Jones's claim of malicious prosecution.  To prove malicious prosecution, the Court must find that the prosecution was "(1) malicious, (2) instituted by or with the cooperation of the defendant, (3) without probable cause, and (4) terminated in a manner not unfavorable to the plaintiff."[13]  *Reilly v. Shepherd*, 643 S.E.2d 216, 218 (Va. 2007).  The Court must consider whether the threat of arrest is sufficient to "set on foot" a criminal prosecution.  *Bain v. Phillips*, 228 S.E.2d 576, 581 (Va. 1976).  In cases lacking an actual arrest, the Fourth Circuit has turned to evaluating whether a  plaintiff was "constructively arrested" based on an extant warrant.  *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1277 (4th Cir. 1994) (applying South Carolina law in case where employer obtained warrant for employee theft and threatened execution of it despite employee's emotional denial of the charge).  In *Barber*, the Court found a constructive arrest because the defendant was aware of the arrest warrant against him, and because the police officers had instituted proceedings.  *Id.*

Despite her claim that longstanding use of the phrase "set[ting] on foot" a prosecution encompasses such a circumstance, Jones cites no case in which a malicious prosecution claim has gone forward absent an arrest warrant being executed or sworn.  Also, while Jones notes that Virginia has rejected the restatement of law in some circumstances, the Court finds persuasive its

---

[13]In addition, Virginia courts have found that in malicious prosecutions stemming from civil proceedings, a "plaintiff must allege and prove arrest of her person, seizure of his property or special injury incurred."  *Ayyildiz v. Kidd*, 266 S.E.2d 108, 111 (Va. 1980); *see also Hilt v. Hurd*, No. 2:01CV00017, 2001 WL 945382, at *1 (W.D. Va. Aug. 10, 2001).

provisions requiring actual institution of process to undergird a malicious prosecution claim, or

to commence a criminal prosecution.  *Restatement (Second) of Torts §§ 653, comment c; 654.*[14]

Indeed, Jones's entire case rests on the premise that Stevens had *not* set on foot any prosecution

and that he acted in furtherance of a private dispute.  Jones met with Stevens and retrieved the

equipment, but Stevens did not accompany her or otherwise physically coerce her actions.  This

also does not amount to "constructive arrest."

---

[14]*Restatement (Second) of Torts § 653, comment c* states in relevant part:

> Criminal proceedings are initiated by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused . . . .

> The making of the charge is not actionable, however, under the rule stated in this Section unless a prosecution actually results from it, or, in other words, unless criminal proceedings are instituted against the accused by the tribunal or official before whom the charge is made in one of the ways described in § 654.  If no such action results, the fact that a criminal charge has been made and considered by an agency of law enforcement gives no cause of action under the rule stated in this section, since the accused has not been subjected to prosecution as a result of the charge.

*Restatement (Second) of Torts § 653, comment c.*

> *Restatement (Second) of Torts § 654* states in relevant part:

> (2) Criminal proceedings are instituted when
> (a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or
> (b) without the issuance of process an indictment is returned or an information filed against him; or
> (c) he is lawfully arrested on a criminal charge.

*Restatement (Second) of Torts § 654.*

Therefore, considering the facts in the light most favorable to Jones, the Court RECOMMENDS that Stevens's Motion to Dismiss Count II be GRANTED.

### 3.    Count III - Extortion

Regarding Stevens's Motion to Dismiss Jones's cause of action for extortion, Virginia courts do not recognize a civil cause of action for extortion. *See Eley v. Evans*, 476 F. Supp. 2d 531, 532 n. 3 (E.D. Va. 2007) ("Virginia courts have also held that a civil cause of action for extortion does not exist in Virginia").  Despite Jones's plea to delay any finding, the Court should not do so in the face of such clear precedent.  Federal district courts "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-- (1) the claim raises a novel or complex issue of State law . . . ."  28 U.S.C. § 1367(c).  While courts may exercise jurisdiction over such "novel or complex" issues, "[i]t is improper for a federal court, without state law to guide it, to plow new ground in a state law field."  *Clossin v. Morris*, No. 3:05-CV-00039, 2006 WL 1134149, at *4 (W.D. Va. Apr. 24, 2006) (quotation omitted).

Given the Virginia courts' clear statement refusing to recognize extortion as a civil cause of action, the Court must decline to exercise supplemental jurisdiction over Plaintiff's cause of action for extortion.  The Court RECOMMENDS that Stevens's Motion to Dismiss Count III be GRANTED.

### 4.    Count IV - Intentional Infliction of Emotional Distress

Next, the Court considers Stevens's Motion to Dismiss Jones's cause of action for Intentional Infliction of Emotional Distress ("IIED").  To prove IIED in Virginia, the plaintiff must establish that:

> (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) there was a causal connection between the

21

wrongdoer's conduct and the emotional distress; and (4) the emotional distress
was severe.

*Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006). The *Harris* court noted that "unlike a claim

for negligence, a plaintiff bringing a claim for intentional infliction of emotional distress must

allege all facts necessary to establish the cause of action to withstand challenge on demurrer." *Id.*

Liability becomes proper "only where the conduct has been so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." *Id.* (citation omitted).

In *Harris,* a brain injured accident victim with previous psychological problems sued a

clinical psychologist conducting an independent medical exam as part of her court action. Harris

alleged that the doctor "'verbally abused [her], raised his voice to her, caused her to break down

into tears. . ., stated she was "putting on a show," and accused her of being a faker and a

malingerer.'" *Id.* (*quoting* complaint). The court explicitly found that such alleged conduct failed

to meet the standards for outrageous and intolerable conduct. *Id.* When viewed with *Harris* in

mind, Jones also does not plead facts sufficient to allege outrageous and intolerable conduct.

Jones concedes that due to a scrivener's error, her Complaint fails to allege that her

emotional distress was severe. (Jones's Opp'n to Stevens at 7.) She omitted not just the word,

but the nature of the trauma undergirding her claim. In *Harris,* the court found that allegations

including severe psychological trauma, mental anguish, nightmares, sleeplessness, depression,

humiliation and injury to reputation insufficiently alleged emotional distress "so severe that no

reasonable person could be expected to endure it." *Id.* at 34.

22

Clearly, Jones's spartan recitation of the elements of IIED fails properly to allege the necessary facts to state a claim.  Therefore, the Court RECOMMENDS that Stevens's Motion to Dismiss Count IV be GRANTED without prejudice to file an Amended Complaint.

### 5.     Count V - Tortious Interference with Contract

_____Finally, the Court considers Stevens's Motion to Dismiss Jones's cause of action for tortious interference with contract.  To prove tortious interference with contract, a plaintiff must establish:

> (1) the existence of a valid contractual relationship or business expectancy;
> (2) knowledge of the relationship or expectancy on the part of the interferor;
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).

Considering the facts in the light most favorable to Jones, the Court finds a valid contract between Jones and Edwards in which Jones loaned Edwards $300 and received equipment as security for the payment thereof.  Jones told Stevens about this contract, and Jones alleges Stevens intentionally interfered in a manner that could terminate her expectations and damage Jones, because her dispossession of the equipment precludes her from recovering the $300 from Edwards.

Stevens relies on *Rappahannock Pistol & Rifle Club, Inc. v. Bennett*, 546 S.E.2d 440 (Va. 2001) to contend that Jones's allegations falter because she fails to allege that Stevens induced or caused Edwards to breach his contract with Jones.  However, *Chaves* appears to recognize a cause of action even absent such a direct breach.  As such, the Court cannot recommend

23

dismissal at this stage.  The Court RECOMMENDS that Stevens's Motion to Dismiss Count V be DENIED.

### IV.  Conclusion

For the reasons articulated above, as to Defendant Town of Ashland's motions, the Court hereby RECOMMENDS that their Rule 12(b)(1) and Rule 12(b)(6) Motions be GRANTED and that their Motion to dismiss any claim for punitive damages or for fees be GRANTED.  As to Defendant Stevens's Motion to Dismiss, the Court RECOMMENDS that the aspects of Count I which Stevens moves to dismiss (Fifth and Fourteenth Amendments) be GRANTED.  Stevens does not move to dismiss the Fourth Amendment claim under Count I, so that aspect of the section 1983 claim remains before the Court.  The Court also RECOMMENDS that Stevens's Motion to Dismiss be GRANTED as to Counts II, III, and IV (without prejudice to file an amended complaint), and DENIED as to Count V.

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within ten (10) days of the date of entry hereof.  Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings.  Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the Complaint.  *See* Fed. R. Civ. P. 72(b).  It may also preclude further review or appeal from such judgment.  *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

The Clerk is directed to send a copy of the Report and Recommendation to counsel of record and to the Honorable Robert E. Payne.

                                                     /s/
                                        _____
                                              M. Hannah Lauck
                                        United States Magistrate Judge

Richmond, Virginia
Date:  November 15, 2007